1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JIMMIE J. ADKISON,

11              Plaintiff,                    No. CIV S-08-1701 DAD

12        vs.

13   MICHAEL J. ASTRUE,                       ORDER
     Commissioner of Social Security,
14
                Defendant.
15   _____/

16              This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment.  For the reasons explained below, plaintiff's

18   motion is granted, the decision of the Commissioner of Social Security (Commissioner) is

19   reversed, and this matter is remanded for further proceedings consistent with this order.

20                          **PROCEDURAL BACKGROUND**

21              On August 25, 2006, plaintiff filed formal applications for Disability Insurance

22   Benefits (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security

23   Income (SSI) under Title XVI of the Act, alleging disability commencing on April 15, 2006, due

24   to end-stage liver disease, alcoholism, pancreatitis, and hepatitis C.  (Transcript (Tr.) at 92-102,

25   112.)  The applications were denied initially in November 2006 and upon reconsideration in

26   March 2007.  (Tr. at 59-73.)  On September 10, 2007, a hearing was held before an

administrative law judge (ALJ) in Medford, Oregon.  (Tr. at 28-58, 74.)  Plaintiff, represented by

counsel, appeared and testified, as did plaintiff's stepfather and a vocational expert.  (Tr. at 28-

29, 46-51, 54-57, 89.)  In a decision issued on October 26, 2007, the ALJ found plaintiff not

disabled at any time from April 15, 2006, through the date of the decision.  (Tr. at 13-22.)  The

following findings were entered:

> 1.  The claimant meets the insured status requirements of the
> Social Security Act through December 31, 2009.
>
> 2.  The claimant has not engaged in substantial gainful activity
> since April 15, 2006, the alleged onset date (20 CFR 404.1520(b),
> 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3.  The claimant has the following "severe" combination of
> impairments: disc space narrowing with mild degenerative facet
> disease, bilaterally, at L3-S1, as shown on x-rays of the lumbar
> spine (Exhibit 17F, page 4); and alcohol-induced liver disease and
> pancreatitis, both improved since the claimant stopped drinking in
> July 2006 (Exhibits 10F, 15F, 17F, page 2; 20F; and 28F, pages
> 18-19 (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of
> impairments that meets or medically equals one of the listed
> impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
> 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned
> finds that the claimant's acute liver and pancreatic conditions on
> compliance with treatment and sobriety resolved inside 12 months
> of the alleged disability onset date to allow him, in conjunction
> with a spinal impairment, to perform a residual functional capacity
> for all functions of light work, as defined by regulation, except for
> no performance of jobs with a high probability of major injury due
> to clotting problems.
>
> 6.  The claimant is unable to perform any past relevant work (20
> CFR 404.1565 and 416.965).
>
> 7.  The claimant was born on May 2, 1956.  Since the alleged
> disability onset date, he was 49 to 51 years of age, which by
> regulation, are as a younger age individual, 18-49 and an individual
> closely approaching advanced age, 50-54 (20 CFR 404.1563 and
> 416.963).
>
> 8.  The claimant has a limited 11th grade education and is able to
> communicate in English (20 CFR 404.1564 and 416.964).

1      9.  The claimant has acquired work skills from past relevant work
       as a caregiver (20 CFR 404.1568 and 416.968).
2
       10.  Considering the claimant's age, education, work experience
3      and residual functional capacity, the claimant has acquired work
       skills from past relevant work that are transferable to other
4      occupations with jobs existing in significant numbers in the
       national economy (20 CFR 404.1560(c), 404.1566, 404.1568(d),
5      416.960(c), 416.966, and 416.968(d)).

6      11.  The claimant has not been under a disability, as defined in the
       Social Security Act, from April 15, 2006 through the date of this
7      decision (20 CFR 404.1520(g) and 416.920(g)).

8      (Tr. at 15-21.)

9             On May 23, 2008, the Appeals Council denied plaintiff's request for review of the

10     ALJ's decision.  (Tr. at 1-4, 8.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g)

11     by filing the complaint in this action on July 22, 2008.

12                                          **LEGAL STANDARD**

13            The Commissioner's decision that a claimant is not disabled will be upheld if the

14     findings of fact are supported by substantial evidence in the record as a whole and the proper

15     legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

16     (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

17     The findings of the Commissioner as to any fact, if supported by substantial evidence, are

18     conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

19     relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

20     Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

21     v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

22     (1971)).

23            A reviewing court must consider the record as a whole, weighing both the

24     evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

25     at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

26     supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

1   substantial evidence supports the administrative findings, or if there is conflicting evidence

2   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

3   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

4   improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

5   1335, 1338 (9th Cir. 1988).

6           In determining whether or not a claimant is disabled, the ALJ should apply the

7   five-step sequential evaluation process established under Title 20 of the Code of Federal

8   Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

9   The five-step process has been summarized as follows:

10          Step one:  Is the claimant engaging in substantial gainful activity?
            If so, the claimant is found not disabled.  If not, proceed to step
11          two.

12          Step two:  Does the claimant have a "severe" impairment?  If so,
            proceed to step three.  If not, then a finding of not disabled is
13          appropriate.

14          Step three:  Does the claimant's impairment or combination of
            impairments meet or equal an impairment listed in 20 C.F.R., Pt.
15          404, Subpt. P, App. 1?  If so, the claimant is automatically
            determined disabled.  If not, proceed to step four.
16
            Step four:  Is the claimant capable of performing his past work?  If
17          so, the claimant is not disabled.  If not, proceed to step five.

18          Step five:  Does the claimant have the residual functional capacity
            to perform any other work?  If so, the claimant is not disabled.  If
19          not, the claimant is disabled.

20   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

21          The claimant bears the burden of proof in the first four steps of the sequential

22   evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

23   sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

24   (9th Cir. 1999).

25   /////

26   /////

4

1            **APPLICATION**

2            Plaintiff advances the following arguments in support of his motion for summary

3    judgment:  (1) the ALJ improperly rejected the opinions of plaintiff's treating physicians

4    concerning the severity of plaintiff's impairments; (2) the ALJ improperly substituted her own

5    opinion for the opinions of plaintiff's treating and examining medical sources and made her own

6    independent medical findings and speculative inferences from the medical evidence; (3) the ALJ

7    improperly rejected plaintiff's subjective symptom testimony; (4) the ALJ improperly relied on

8    evidence of plaintiff's ability to carry on certain daily activities as evidence of ability to work; (5)

9    the ALJ improperly rejected the testimony of plaintiff's stepfather and the written statement of

10   plaintiff's mother; and (6) the ALJ erred in basing her decision on the opinion of a vocational

11   expert given in response to an incomplete hypothetical question that did not accurately reflect

12   plaintiff's condition, while disregarding the vocational expert's response to a hypothetical

13   question that described plaintiff's actual condition.  These arguments are addressed below.

14   **I.  ALJ's Treatment of Medical Opinions**

15            In his first and second arguments, plaintiff contends that the ALJ improperly

16   rejected the opinions of plaintiff's treating physicians, David J. Herfindahl, M.D. and Michael L.

17   Hess, M.D., concerning the severity of plaintiff's impairments, and improperly substituted her

18   own opinion for the opinions of plaintiff's treating and examining medical sources, making

19   independent medical findings and drawing speculative inferences from the medical evidence.

20            The weight to be given to medical opinions in Social Security disability cases

21   depends in part on whether the opinions are proffered by treating, examining, or nonexamining

22   health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

23   "As a general rule, more weight should be given to the opinion of a treating source than to the

24   opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830.  This is so because a

25   treating doctor is employed to cure and has a greater opportunity to know and observe the patient

26   as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894

1  F.2d 1059, 1063 (9th Cir. 1990).  A treating physician's uncontradicted opinion may be rejected

2  only for clear and convincing reasons, and an opinion controverted by another doctor may be

3  rejected only for specific and legitimate reasons supported by substantial evidence in the record.

4  Lester, 81 F.3d at 830-31.  However, the ALJ need not give weight to a conclusory opinion

5  supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir.

6  1999) (affirming rejection of a treating physician's "meager opinion" as conclusory and

7  unsubstantiated by relevant medical documentation, and provided no basis for finding the

8  claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

9           "The opinion of an examining physician is, in turn, entitled to greater weight than

10 the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's

11 uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing

12 reasons, and when an examining physician's opinion is controverted by another doctor, the

13 opinion may be rejected only for specific and legitimate reasons supported by substantial

14 evidence in the record.  Id. at 830-31.  "The opinion of a nonexamining physician cannot by itself

15 constitute substantial evidence that justifies the rejection of the opinion of either an examining

16 physician or a treating physician."  Id. at 831 (emphasis in original).

17          In order to meet the burden of setting forth specific, legitimate reasons for giving

18 less weight to the controverted opinion of a treating or examining physician, the ALJ must set out

19 a detailed and thorough summary of the facts and conflicting clinical evidence, state his or her

20 interpretation of the evidence, and make specific findings.  Thomas v. Barnhart, 278 F.3d 947,

21 957 (9th Cir. 2002) (citing Magallanes, 881 F.2d at 751).  The ALJ must explain why any

22 significant probative evidence has been rejected and must reach a decision supported by

23 substantial evidence.  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v.

24 Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

25          Here, plaintiff argues that the ALJ improperly rejected the opinions of his treating

26 physicians, David J. Herfindahl, M.D. and Michael L. Hess, M.D., and instead relied on her own

6

1   interpretation of lab results from July 2007 showing that plaintiff's liver functioning "remained

2   normal." In this regard, plaintiff cites Dr. Herfindahl's opinion on August 4, 2006, that plaintiff

3   would be incapable of performing his regular or customary work due to end stage liver disease at

4   least until January 1, 2007 (tr. at 382); his opinion on August 24, 2006, that plaintiff's INR was

5   down, "a considerable improvement," but that plaintiff was still shaky and had some right upper

6   quadrant pain (tr. at 380); and his opinion on September 26, 2006, that January 1, 2007, was still

7   the estimated date on which plaintiff would be capable of performing his regular or customary

8   work (tr. at 379). Plaintiff also cites Dr. Hess's opinions on February 1, 2007, that plaintiff's

9   alcoholic cirrhosis, abdominal pain, and chronic back and leg pain made it difficult for plaintiff

10  to do any significant labor and that plaintiff had a significant disability which was likely to be

11  chronic (tr. at 427); and his opinions on September 5, 2007, that plaintiff still had back pain and

12  an ache in his left thigh which had not been helped by epidural steroid injections and that

13  plaintiff was still not able to work due to cirrhosis, GERD, and back pain (tr. at 477-78).

14          The ALJ's analysis of plaintiff's residual functional capacity commences with her

15  assertion that she has considered opinion evidence in accordance with applicable regulations and

16  Social Security Rulings. (Tr. at 16.) The ALJ states that she "has given greater weight to the

17  opinions of State agency medical consultants," with the addition of a limitation requiring plaintiff

18  to avoid hazardous job settings because of his credible testimony about difficulty with proper

19  blood clotting and a blood thinning medication he is taking. (Id.) The ALJ addressed the

20  opinions of treating physicians Dr. Hess and Dr. Herfindahl as follows:

21          As set forth in Exhibit 16F, the opinion of treating physician, Dr.
            Hess, that the claimant's cirrhosis combined with his abdominal,
22          back as well as leg pain made it difficult for him to do any
            significant labor is not materially different or at odds with the
23          claimant being limited to a range of light exertion, as found by the
            undersigned. Finally, the undersigned has concluded that at all
24          material times hereto the claimant's residual functional work
            capacity prevents the performance of any former work, based on
25          the testimony of a vocational expert set forth below. Therefore, the
            conclusions in this decision are not inconsistent with the opinion of
26          treating physician, Dr. Herfindahl, that he did not expect the

7

1                  claimant to be able to resume his former work from August 2006
through January 1, 2007.  However, the aspect of Dr. Herfindahl's
2                  opinion that he did not expect the claimant to improve medically
during period of time is contrary to the medical evidence, as
3                  summarized below, which establishes that the claimant on
continued sobriety to be considerably improved by September 2006
4                  and thereafter (Exhibit 10F, page 7).

5  (Tr. at 16.)

6         As noted by Dr. Dhaliwal, the state agency medical consultant who prepared the

7  physical residual functional capacity assessment that was given "greater weight" by the ALJ, the

8  record contains no treating or examining source statements regarding plaintiff's physical

9  capacities.  (Tr. at 399.)  All but one of the treating physicians' opinions cited by plaintiff

10  supra are found in treatment records and state disability forms[1] rather than in formal evaluations.

11  Dr. Hess's brief opinion, that plaintiff's conditions made it difficult for him to do any significant

12  labor and that plaintiff had a significant disability which was likely to be chronic, was addressed

13  "To Whom It May Concern" and is conclusory.  (See tr. at 427.)

14         In the absence of treating or examining source statements, the ALJ relied on the

15  non-treating, non-examining state agency doctor's assessment of plaintiff's residual functional

16  capacity and attempted to interpret lab results and treatment records on her own, without the

17  benefit of professional guidance.  As a result, the ALJ's approach to the treating physicians'

18  opinions is to find that Dr. Hess's opinions are "not materially different [from] or at odds with"

19  the residual functional capacity assessed by the state agency physician because the treating

20  physician was not specific about plaintiff's "significant disability" and to find further that her

21  own conclusions about plaintiff's residual functional capacity for light work "are not inconsistent

22  with the opinion of treating physician, Dr. Herfindahl" because the treating physician did not

23

24        [1]  The January 1, 2007 return-to-work date cited by the ALJ was provided by Dr.
Herfindahl in response to a box on the disability form that requires the doctor to indicate the date
25  on which the patient was released or the doctor anticipates releasing the patient "to return to
his/her regular/customary work."  (See tr. at 382.)  The form precludes responses such as
26  "Unknown" and "Indefinite."  (Id.)  The form provides no means of indicating that the patient is
or is not capable of performing work other than his or her regular or customary work.

1  expect the claimant to be able to resume his former work prior to January 1, 2007, and she

2  determined that plaintiff cannot return to his former work at all.  This approach to the treatment

3  records and the opinions of the treating physicians, however informally and briefly those

4  opinions were expressed, is not appropriate.

5          The ALJ should have obtained medical source statements from the treating

6  physicians and treated those opinions as entitled to the greatest weight, then should have

7  considered whether those opinions were contradicted by the opinions of other doctors, and finally

8  should have articulated either clear and convincing reasons for rejecting uncontradicted opinions

9  or specific and legitimate reasons supported by substantial evidence in the record for rejecting

10  any controverted opinions.

11          Therefore, the court finds that the ALJ's decision is not supported by substantial

12  evidence in the record as a whole and that the proper legal standards were not applied to the

13  treating physicians' opinions.  Plaintiff is therefore entitled to summary judgment on his claims

14  that the ALJ improperly rejected the opinions of treating physicians Dr. Herfindahl and Dr. Hess

15  and that the ALJ improperly relied on her own opinions based upon inferences drawn from the

16  evidence.  The matter will be remanded so that the ALJ can obtain medical source statements

17  from the treating physicians and consider obtaining evaluations by appropriate examining

18  physicians before reconsidering the evidence using the proper legal standards.

19  **II.  ALJ's Treatment of Witness Testimony and Statements**

20          In his third, fourth, and fifth arguments, plaintiff contends that the ALJ improperly

21  rejected plaintiff's subjective symptom testimony, improperly relied on evidence of plaintiff's

22  ability to carry on certain daily activities as evidence of ability to work, and improperly rejected

23  the lay testimony and statements of plaintiff's mother and stepfather.  The court agrees.

24          Once a claimant has presented medical evidence of an underlying impairment, the

25  ALJ may not discredit the claimant's testimony as to the severity of his symptoms merely

26  because the symptoms are unsupported by objective medical evidence.  Reddick v. Chater, 157

1  F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

2  Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only

3  by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting

4  Smolen, 80 F.3d at 1281).  See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722;

5  Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller, 770 F.2d at 848).

6              In evaluating a claimant's subjective testimony regarding pain and the severity of

7  his symptoms, the ALJ may consider the presence or absence of supporting objective medical

8  evidence, along with many other factors.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)

9  (en banc); Smolen, 80 F.3d at 1285.  The ALJ may also rely in part on his or her own

10  observations.  Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989).  However, the ALJ cannot

11  substitute such observations for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

12  (9th Cir. 1990).

13              With respect to daily activities, it is well established that social security claimants

14  need not be "utterly incapacitated to be eligible for benefits."  Fair, 885 F.2d at 603.  See also

15  Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050

16  (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried

17  on certain daily activities, such as grocery shopping, driving a car, or limited walking for

18  exercise, does not in any way detract from her credibility as to her overall disability.").  In

19  general, the Commissioner does not consider "activities like taking care of yourself, household

20  tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial

21  gainful activities.  20 C.F.R. § 404.1572(c).  See also 20 C.F.R. § 404.1545(e).  Daily activities

22  may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part

23  of his day engaged in pursuits involving the performance of physical functions that are

24  transferable to a work setting.  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  In order to

25  conclude that the claimant's activities warrant an adverse credibility determination, however, the

26  /////

1   ALJ must make specific findings relating to the claimant's daily activities and the transferability

2   of those activities to the work setting. Id.

3          The testimony of lay witnesses, including a claimant's family members, reflecting

4   their own observations of how the claimant's impairments affect his activities must be

5   considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

6   2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Friends and family members who

7   see the claimant on a daily basis are competent to testify as to their observations. Regennitter v.

8   Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d

9   915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay

10  witness, she must give reasons germane to each particular witness. Regennitter, 166 F.3d at

11  1298; Dodrill, 12 F.3d at 919. The mere fact that a lay witness is a relative of the claimant

12  cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen,

13  80 F.3d at 1289. Nor does the fact that medical records do not corroborate the testimony provide

14  a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289. It is especially important

15  for the ALJ to consider lay witness testimony from third parties where a claimant alleges pain or

16  other symptoms not supported by medical evidence in the file and the third parties have

17  knowledge of the claimant's daily activities. 20 C.F.R. § 404.1513(e)(2); Social Security Ruling

18  (SSR) 88-13.

19          Questions of credibility and the resolution of conflicts in the testimony are usually

20  deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of

21  credibility is a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94

22  F.3d 520, 522 (9th Cir. 1996). As a general rule, an ALJ's assessment of credibility should be

23  given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Ordinary techniques

24  of credibility evaluation may be employed, and the adjudicator may take into account prior

25  inconsistent statements or a lack of candor by the witness. Fair, 885 F.2d at 604 n.5. Absent

26  /////

1    affirmative evidence of malingering, however, the ALJ's reasons for rejecting the claimant's

2    testimony must be clear and convincing.  Morgan, 169 F.3d at 599.

3           The court has carefully reviewed the ALJ's discussion of plaintiff's testimony, the

4    testimony of plaintiff's stepfather, and the written statement of plaintiff's mother.  (Tr. at 17-20.)

5    The ALJ's own interpretations of lab results, treatment notes, and decisions about plaintiff's

6    treatment are not supported by medical opinion evidence and fail to provide clear and convincing

7    reasons for rejecting any of the lay testimony.  The inconsistencies asserted by the ALJ are not

8    convincing and do not diminish the testimony of plaintiff or his parents.  The chronology of

9    plaintiff's work circumstances and medical history demonstrates that plaintiff's employment

10   came to an end prior to the onset of his disability and explains why his unemployment benefits

11   overlapped with the first two or three months of his disability.  The minor inconsistencies

12   between the statement prepared by plaintiff's mother in 2006 and plaintiff's own testimony in

13   2007 are in fact consistent with the evolution of plaintiff's condition.

14          The ALJ's decision regarding plaintiff's testimony and the testimony and

15   statements of the third-party witnesses is not supported by substantial evidence in the record, and

16   the ALJ improperly relied on evidence of plaintiff's ability to carry on minimal daily activities to

17   discount the credibility of plaintiff's subjective symptom testimony.  The ALJ did not make

18   specific findings relating to plaintiff's daily activities and the transferability of those activities to

19   the work setting, and the court finds that plaintiff's daily activities do not demonstrate that he

20   spends a substantial part of each day engaged in pursuits involving the performance of physical

21   functions that are transferable to a work setting.  For these reasons, plaintiff is entitled to

22   summary judgment on his third, fourth, and fifth claims.

23                                    **CONCLUSION**

24          The court has found that remand is required.  The ALJ is directed to give proper

25   weight to the opinions of plaintiff's treating physicians, after developing the record to the extent

26   needed, and to credit plaintiff's subjective symptom testimony, the testimony of plaintiff's

1  stepfather, and the written statement of plaintiff's mother.  In light of the required remand, the

2  court does not address plaintiff's argument that the ALJ erred in basing her decision on the

3  opinion of a vocational expert given in response to an incomplete hypothetical question that did

4  not accurately reflect his condition.  The record is not sufficiently developed for consideration of

5  this argument at the present time.  See Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

6  1994).  If the sequential evaluation proceeds to step five on remand, the ALJ shall hold a new

7  hearing at which plaintiff is permitted to testify and hypothetical questions are presented to a

8  vocational expert in a manner that properly takes into account all of the limitations on plaintiff's

9  ability to engage in work-related functions.

10            In accordance with the above, IT IS HEREBY ORDERED that:

11            1.  Plaintiff's December 17, 2008 motion for summary judgment (Doc. No. 15) is

12  granted;

13            2.  The decision of the Commissioner of Social Security is reversed; and

14            3.  This case is remanded for further proceedings consistent with this order.

15  DATED: September 30, 2009.

17  _____

18  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

19  DAD:kw
   Ddad1/orders.socsec/adkison1701.order

13